(No. 5489. Decided July 18, 1905.)

ROBERT MACK, *Appellant,* v. JOHN MACK *et al.,*
*Respondents.*[1]

CONTRACTS—GRUBSTAKE—TRUST—ACCOUNTING—EVIDENCE—SUFFICIENCY. In an action between brothers for an accounting and the transfer of stock, the evidence is sufficient to show that the defendant held a one-third interest in a mining claim in trust for the plaintiff, where it appears that the claim was located in defendant's name and development work done by plaintiff under a grubstake agreement in consideration of a one-third interest, that defendant accounted to plaintiff for one-third of receipts from partial sales, and wrote letters acknowledging the trust; and it is error to dismiss the action.

SAME—STATUTE OF FRAUDS—AGREEMENT NOT IN WRITING. A contract whereby defendant grubstaked the plaintiff, who did development work upon a mining claim, in consideration of a one-third interest therein, which interest the defendant agreed to hold in trust for him, is not within the statute of frauds and need not be in writing.

SAME—ACCOUNTING—TRUST—EXPENDITURES IN CARING FOR JOINT PROPERTY. Where the locator of a mining claim held one-third thereof in trust for the plaintiff, in consideration of development work done,

1Reported in 81 Pac. 707.

and subsequently expended money and time in caring for and managing the property, upon a sale of the property and an accounting, the trustee is entitled to one-third of the sum justly due for such disbursements and services, as a lien to be charged against the plaintiff's one-third interest in the proceeds.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered June 2, 1904, in favor of the defendants, after a trial before the court without a jury, dismissing on the merits an action to recover mining stock held in trust for plaintiff. Reversed.

*Kirkpatrick, Price & Carver,* and *Barnes & Latimer,* for appellant.

*Danson & Huneke,* for respondents.

CROW, J.—This action, brought by appellant, Robert Mack, against respondents John Mack, W. J. Morrison, The Athelstan· Gold and Copper Mining Company, Ltd., and C. S. Slawson, was originally instituted in the superior court of King county, later transferred to Spokane county, and there tried upon the issues joined. The original complaint was so amended as to correct the name of the mining company in which an error had been made, and to bring in C. S. Slawson as defendant. Pending the action, restraining orders were made and served upon said W. J. Morrison, individually and as secretary of the corporation, and upon said John Mack and C. S. Slawson, to prevent the sale or transfer of certain mining stock hereinafter mentioned. Upon trial, the superior court, without making findings of fact or conclusions of law, dissolved said restraining order, dismissed the action, and entered judgment against appellant. From said final judgment, this appeal has been taken.

The vital questions involved on this appeal are purely questions of fact. This being an action in equity, it is now before us for examination *de novo* and determination upon the entire record. The trial court having failed to make any findings of fact or conclusions of law, there is nothing

before us to disclose the principles upon which the final judgment was entered, and we are now compelled to decide all questions of fact and weigh conflicting evidence without deriving any benefit from expressed views or findings of the trial court. As the conclusions at which we arrive do not agree with those of the honorable and learned trial judge, we find ourselves, in the absence of findings of fact or conclusions of law, unable to understand the theory upon which the action was dismissed. From the nature of defenses made, however, we conclude it must have been on some question of law rather than one of fact.

Having carefully examined the pleadings and evidence, upon consideration thereof, we find the facts to be, in brief, as follows: Appellant, Robert Mack, the respondent John Mack, and one William Mack, are brothers. During the year 1893, and for some time thereafter, Robert Mack and John Mack were locating mining claims in British Columbia, under an agreement whereby John was to defray all expenses, or do the "grub-staking," while Robert was to locate the claims, which they were to own, share and share alike. Under this agreement, a number of claims were located in the years 1893 and 1894. Afterwards, in the year 1896, John Mack, the respondent, went from Spokane to British Columbia, not for the primary purpose of locating additional claims, but for the purpose of having assessment work done on various properties owned by him in that locality. Before leaving Spokane, he, in conversation with Robert Mack, agreed that, if he located any additional ground on his trip, the same was to be located for himself and appellant. While in British Columbia, he had an interview with one William J. Porter, in which he requested said Porter to show him some valuable ground. Thereupon Porter agreed to do so, provided respondent would locate the same not only for respondent himself, but also for his brother Robert Mack. To this respondent assented, and thereupon Porter showed him certain ground and assisted him in locating the Athel-

stan claim, now in dispute in this action. The location was made in the name of John Mack, and the claim continued at all times to stand in his name, except as hereinafter stated.

No particular work was done upon said claim, by respondent at the time of its locatio.., but in 1897 it became necessary to do the assessment work, and it was also deemed advisable to do further work for the purpose of development. About this time, Will Mack came from Indiana to Spokane, Washington, with the intention of going to British Columbia with his brother, the appellant Robert Mack, and assisting in doing assessment and development work on the Athelstan claim, with the understanding that he was to be paid going wages by John Mack for his services. Robert and Will procured an outfit and proceeded from Spokane to British Columbia, did the assessment work, also did a large amount of development work, and discovered a good ore body, showing the property to be very valuable. While they were on the claim, the respondent John Mack visited them for two or three days, and entered into a contract by which it was stipulated that the claim should be owned, one-third by himself, one-third by Robert, and one-third by Will, the development work then in progress to be done by Will and Robert without further compensation than their actual expenses, or grub-stake, which was to be furnished by John.

After the development work had been done by Robert and Will, the claim, by reason thereof, showed sufficient value to enable respondent John to bond it to the partnership firm of Crane & Loring, who were to pay $15,000 for it, in the event of their taking up the bond. Crane & Loring did, in the year 1898, pay $1,500 upon this bond, to the respondent John, who immediately paid $500 to Robert and $500 to Will. After this payment of $1,500 had been made by Crane & Loring, the bond was forfeited by them, and the claim reverted to respondent John Mack. Some time

13—39 WASH.

during the year 1900, the respondent John effected a sale of the claim to the Athelstan Gold and Copper Mining Company, Ltd., for $3,000 cash and 350,000 shares of the paid-up capital stock of said company. Immediately thereafter John paid $1,000 of said sum to the appellant Robert, $1,000 to Will, and retained the remaining $1,000 himself. About the same time he wrote separate letters to Will and Robert, in which he, in substance, stated that he held in his own name, in trust, in order that he might handle the same, said 350,000 shares of stock, one-third thereof for Robert, and one-third for Will.

About this time it seems to have been agreed between the three brothers that 50,000 shares of the stock was to be held for their father, leaving 300,000 shares for themselves. No further settlement was ever made between John and appellant Robert. Early in the year 1903, appellant wrote several letters to John, asking about his one-third interest in the stock, and requesting that the same be transferred to him. His letters were not answered, and thereupon he employed an attorney to write John and secure a settlement. John referred the attorney's letter to his own attorneys in Spokane, with the result that, after a brief correspondence, he denied any liability whatever, and insisted that appellant had no interest in the claim or the stock. Thereupon this action was commenced to recover the stock, which appellant claimed was held by respondent John as trustee for him.

Shortly after the correspondence between appellant and respondent John Mack had commenced, said respondent entered into a written contract with the respondent W. J. Morrison, whereby he agreed to sell said 350,000 shares of said capital stock to the said Morrison for four cents per share, or for the total sum of $14,000, payable within twelve months from May 29, 1903, as follows: One and one-half cents per share on or about November 29, 1903, and two and one-half cents per share within six months there-

after; and in pursuance of said contract the stock was placed in escrow in a bank in British Columbia.

The original complaint in this action was served upon the respondent John Mack about November 10, 1903, but was verified on the 4th day of November, 1903. At some time between the 4th and the 9th days of November, 1903, the respondent John Mack entered into an agreement with the respondent C. S. Slawson, whereby he sold his interest in the Morrison contract to said Slawson for $10,000; $5,000 being payable November 6, 1903, and $5,000 January 1, 1904. It appears from the record that Slawson has paid the respondent John Mack in full for two-thirds of the stock under this contract, the remaining one-third, or 116,000 shares, being still held in escrow under a subsequent written agreement entered into between the respondent John Mack and said Slawson, to abide the result of this litigation.

Many of these facts which we find are disputed by respondent John Mack, but are supported by evidence of witnesses introduced on behalf of appellant. We are compelled to accept the statements of appellant and his witnesses, for the reason that they are clearly corroborated by undisputed facts and written evidence, while the evidence of John is in direct conflict therewith, and he admits that he had forgotten the contents of the letters written by him until they were produced in court. It is contended by the respondent John Mack that neither Robert nor Will ever had any valid or legal interest in or to the Athelstan claim or said mining stock. He insists that all payments to them from the proceeds of the Crane & Loring bond, and the sale to the mining company, were gifts, made by him with the sole intention of helping his brothers, who needed assistance, and that, by the statements contained in his letters, he only meant that, if he ever made any sale of the stock, he would help them further, but that he was under no legal obligation to do so. We cannot possibly see how these contentions can

be sustained, in the light of the undisputed fact that, at the time Robert and Will did the assessment work, he paid them nothing for their services, but only defrayed actual expenses; and the fact that, by statements contained in his letters, he clearly recognized their right to a one-third interest in the stock; and the fact that, in making settlement with them, he always paid them exactly one-third of the amounts received from the claim. We are forced to find that the position of the appellant has been sustained by the evidence, and in the absence of any assistance, from findings of fact or conclusions of law made by the trial court, to aid us in weighing the evidence, must so conclude.

Respondent John Mack, at the trial, further contended, and now contends, that the alleged contract under which appellant claims his one-third interest was not in writing, and was void, being within the statute of frauds. It may have been upon this theory that the trial court dismissed the action. We fail to see how the statute of frauds has any application whatever to the facts as found by us, and think there is no merit in respondent's contention. The contract which we find to have been entered into by John Mack and Robert Mack is enforcible, and not within the statute of frauds. *Raymond v. Johnson,* 17 Wash. 232, 49 Pac. 492, 61 Am. St. 908; *Eberle v. Carmichael,* 8 N. Mex. 696, 47 Pac. 717; *Gore v. McBrayer,* 18 Cal. 583; *Murley v. Ennis,* 2 Colo. 300; *Meylette v. Brennan,* 20 Colo. 242, 38 Pac. 75.

Another question appears in the record. Respondent John Mack, in his affirmative answer, pleads that, during the time he managed said claim and cared for the disputed interests therein, and in the Athelstan Gold and Copper Mining Company, Ltd., he made a considerable outlay of funds for necessary expenses, amounting to $1,442, and also employed his own time to the value of $2,000; and while he denies that appellant ever had any interest in said mining claim, or now has any interest in the stock, he asks,

in the event of an adverse ruling against him on said issue, that he be decreed a lien upon said stock for the total sum of $3,442, to compensate him for such disbursements and services. In our opinion he is entitled to a lien for such sums as may be justly due him. Upon a careful examination of the evidence, we find that he has made necessary and proper disbursements to the amount of $724.50 in cash, and that he has put in time in caring for, looking after, and managing the property, to the value of $1,000, being $1,724.50 in all. Equitably one-third of this sum should be paid by the appellant Robert Mack, before he can be permitted to recover the stock which is held by John in trust for him.

As a block of 50,000 shares of this stock was to go to the father, we find that respondent John Mack now holds in his name, in trust for appellant, 100,000 shares of the paid-up capital stock of the Athelstan Gold and Copper Mining Company, Ltd., and that appellant is entitled to have the same transferred to him, upon paying to said respondent John Mack one-third of said sum of $1,724.50, being $578.17.

We find that error was committed in dismissing the action, and it is therefore ordered that the judgment of the honorable superior court be reversed, that this cause be remanded with instructions to enter a decree adjudging the appellant Robert Mack to be entitled to recover from the respondent John Mack 100,000 shares of the capital stock of said mining company, provided that, within ninety days after the filing of the remittitur from this court, said appellant shall first pay to the said respondent John Mack the said sum of $578.17, with six per cent interest from the 4th day of September, 1903, the date of the commencement of this action; said decree to further provide that said respondent John Mack be adjudged to hold a lien upon said stock for said sum; and that, in the event said appellant shall not pay said sum within said ninety days, the said John Mack be

entitled to an order directing a sale of said stock, or so much thereof as may be necessary, to satisfy said sum of $578.17 and interest. It is further ordered that the appellant recover his costs in the superior court, and also upon this appeal.

MOUNT, C. J., RUDKIN, ROOT, and DUNBAR, JJ., concur.

HADLEY and FULLERTON, JJ., took no part.