[Civ. No. 720. Second Appellate District.—November 29, 1909.]

## JACK BYRNE, Appellant, v. TOM KNIGHT and JOE SIMPSON, Respondents.

MINING CLAIMS—TRUST IN LOCATIONS—"GRUB-STAKE" CONTRACT—FINDING AGAINST EVIDENCE.—In an action to enforce a trust in mining locations discovered and located by a prospector under a "grub-stake" contract to share such locations equally with one who had furnished provisions to the prospector, it is held, upon a review of the evidence, that a finding by the trial court that the "grub-stake" contract had ceased to exist when the claims were located is unsustained by the evidence, and that an order of the trial court denying a new trial to the plaintiff must be reversed.

ID.—FAILURE TO INSERT PLAINTIFF'S NAME IN LOCATIONS IMMATERIAL.—If, as matter of fact, the uncontradicted evidence demonstrates that the "grub-stake" contract did exist between the parties when the locations were made, it is immaterial whether plaintiff's name was inserted in the location notices posted at the mines or recorded in the mining district; but, in such case, plaintiff's right to the agreed interest in the mining property located attached regardless of the character of the location notices actually posted or recorded.

ID.—VESTED RIGHTS OF PLAINTIFF UNAFFECTED BY ACTION OF DEFENDANT WITHOUT CONSENT.—After the rights of the plaintiff had attached by record of the notices of location, while the grub-stake contract was subsisting, his vested rights cannot be affected by any new contract made by defendant with other parties without plaintiff's knowledge or consent.

ID.—RULES AS TO SUPPORT OF FINDING.—Although where there is a conflict of evidence the finding of the trial court will not be disturbed, yet where a finding is wholly unsupported by any evidence affirmatively appearing in the record to sustain it, and it is assailed by proper specifications, and is essential to support the judgment, the finding and judgment cannot stand.

APPEAL from an order of the Superior Court of Inyo County, denying a new trial. Walter A. Lamar, Judge.

The facts are stated in the opinion of the court.

George Edgar Jackson, and P. W. Forbes, for Appellant.

S. E. Vermilyea, Ben. H. Yandell, and Wellborn, Wellborn & Campbell, for Respondents.

ALLEN, P. J.—The action is one to obtain a judgment decreeing defendants to hold in trust for plaintiff an undivided half-interest in certain mining locations. Plaintiff's claim of right thereto is based upon what is known in miners' parlance as a "grub-stake" contract.

This contract, the court finds, was entered into between plaintiff and defendant Knight about the 3d of January, 1906, and that plaintiff and defendant performed all conditions imposed upon either up until January 12, 1906, upon which date, the court finds, the contract was abrogated, and that thereafter plaintiff furnished no supplies to Knight. That while Knight did, on and between February 14 and April 26, 1906, locate the following claims, known as "Last Hike" Nos. 1, 2, 3, 4, 5, 6, 8, 10, 12, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43 and 44, the "Mars" group, consisting of eight claims, numbered 1 to 8, inclusive, and the "Venus" group, consisting of eight claims, numbered 1 to 8, inclusive, he did not locate during that time "Last Hike" claims Nos. 7, 9, 11, 13, 27, 28, 45, 46, 47 and 48, or "Jupiter" Nos. 2 and 4. That defendant Knight did not locate all or either of the claims found to have been located in the name of plaintiff and himself as equal owners or owners in any other proportion, or at all; that all of said claims were located by said Knight in the name of himself and defendant Joe Simpson; that Knight filed such location notices of the locations made by him in the recorder's office of the "Wild Rose" mining district between the 14th of March and the 2d of April, and that the name of plaintiff did not appear in any of such recorded notices.

The accuracy of the finding of the court with relation to the abrogation of the grub-stake contract, and the further finding that after the 12th of January plaintiff furnished no supplies, and that the locations were not made in the name of plaintiff as originally agreed upon, is challenged. We think if the findings of the court, to the effect that the grub-stake contract was not in force at the date of the making of the locations, and that plaintiff furnished no supplies between the 12th of January and the dates of the locations, have no support from the evidence, that it is of little materiality whether plaintiff's name was inserted in the location notices posted at the mines or recorded in the mining dis-

trict. If, as a matter of fact, the uncontradicted testimony in the case demonstrates that the grub-stake contract did exist between the parties at the date of these locations, and that pursuant thereto plaintiff had furnished, as agreed, necessary supplies to defendant, plaintiff's right to the property located during the life of such contract attached regardless of the character of the location notices actually posted or recorded.

We have examined the record with great care to discover some evidence from which the trial court would be warranted in finding that no grub-stake contract existed at the date of the locations mentioned, or that plaintiff was in default in relation to the obligations imposed upon him by such contract, and we are unable to find any testimony tending to show the abrogation of the contract or plaintiff's default. The uncontradicted testimony in the record is to the effect that while plaintiff and defendant made the contract, as found by the court, in January, 1906, that between that date and January 12th plaintiff was injured and went to Ballarat, a distance of thirty-five miles from Harrisburg, in the district surrounding which the prospecting was being done. That on the 12th of February defendant Knight came to Ballarat in a wagon driven by a Mrs. Adams, and on that day the grub-stake contract entered into on the 3d of January at Harrisburg was renewed. To use the language of plaintiff, "he told me that me and him was in on anything he found." Pursuant to this, it is in testimony that on that day plaintiff saw one Calloway, who, with a partner named Schober, was operating a little store at Ballarat, and that plaintiff inquired of Calloway—and this is corroborated by Calloway's testimony—if he (Calloway) would furnish Knight with a bill of grub to go prospecting with and that plaintiff would pay for it later. This Calloway assented to; and it further appears that on the day following, being the 13th of February, Knight applied to Calloway at the store and asked him if Byrne had made arrangements for some grub for him, and Calloway answered in the affirmative. It then appears that later in the day Knight got the supplies, but they were delivered by Schober, Calloway's partner, who was ignorant of the agreement between plaintiff and Calloway, and after the goods were delivered the same were charged on a tag to Knight and subsequently transcribed upon the books in that

way. It further appears that when Mrs. Adams and Knight
returned to Harrisburg from Ballarat, Knight told the hus-
band of Mrs. Adams that the reason why he went to Bal-
larat for the supplies was because Byrne had stood Calloway
off for them. It further appears that on the 14th or 15th
of February Knight went up about six miles from Harris-
burg to a locality now called "Skidoo," being the place where
these controverted mining locations are situate, and after his
arrival there told a fellow-miner that he was prospecting for
plaintiff and Joe Simpson. It further appears that when he
went up to Skidoo he took with him a Dutch oven and some
cooking utensils belonging to plaintiff; that the day follow-
ing, and within a week thereafter, he located all of the min-
ing claims found by the court to have been located by him.
The uncontradicted evidence is, further, that a number of
the location notices contained the name of plaintiff as one of
the locators in connection with that of Knight and Simpson;
and, further, it appears that when copies of the notices were
presented a month later for record the name of Byrne ap-
peared on some of them examined by witnesses. It is true
that there is evidence in the record tending to show that after
Knight came back to Harrisburg he gave away the supplies
obtained at Calloway's and accepted other supplies from Simp-
son, agreeing to locate for Simpson, and that Simpson was
the acting recorder of the district where the location notices
were recorded. But even conceding this to be true, a case
is presented where a contract is made on the 13th of Feb-
ruary and an arrangement made by plaintiff at the store,
the effect of which was to create a liability in favor of the
merchant as against plaintiff for the value of the supplies
furnished, and that Knight obtained these supplies and within
a time when such supplies would have been sufficient for his
sustenance he made the locations, and we find nothing in the
record controverting these established facts. It is true that
after the locations were made and the notices recorded and
the controversy arose in relation to the interests of the par-
ties, Knight, or someone for him, went to the store of Callo-
way and Schober and paid the bill; but most certainly had
Knight not paid the bill plaintiff would have been liable for
the goods, under the evidence in the record, and being lia-
ble and Knight having obtained the goods and made the loca-
tions, he could not destroy the force and effect of the con-

tract, nor impair plaintiff's rights, by subsequently, without plaintiff's knowledge or consent, liquidating the demand for the supplies; nor could he destroy plaintiff's rights during the existence of this contract and while he was subsisting upon plaintiff's supplies by entering into a new contract with Simpson.

As a summary, then, we are of opinion that the record wholly fails to support the findings that no grub-stake contract existed at the date of the locations, that plaintiff did not furnish the supplies required, and that the locations were not made in the name of plaintiff as one of the colocators. While we recognize fully the force and effect of the rule that where there is a conflict in the evidence the finding of the trial court will not be disturbed, we recognize another rule, that something must affirmatively appear in the record to support a material finding when the same is attacked by proper specifications, and when such finding is essential in support of the judgment.

The order denying a new trial is therefore reversed, and cause remanded for further proceedings.

Shaw, J., and Taggart, J., concurred.