## DE HON et al v. GORDON et al.

Third Division. Anchorage. August 14, 1924.

No. A-330.

**1. Mines and Minerals ⬤⟶101—Contracts—Grubstake Agreement.**

Plaintiffs entered into an oral agreement with one Isaacs, by which Isaacs agreed to go to a distant oil district and locate a claim or claims for them. They paid him $1,500, with which he made the journey and located one claim for plaintiffs, containing four square miles of land. He then returned home and reported to plaintiffs. On a second trip to the same field he located a second claim under an agreement with one Olive Gordon, one-half to her and one-half to himself. On suit by plaintiffs to compel transfer of the second claim to plaintiffs, *held* that, as chapter 49 of the Session Laws of Alaska of 1913 requires all grubstake agreements to be in writing, except as between the original parties, the Olive Gordon claim was not subject to the original grubstake agreement only so far as the one-half interest claimed by Isaacs. *Held,* that was subject to the original grubstake contract between the plaintiffs and Isaacs, their agent.

**2. Mines and Minerals ⬤⟶101—Grubstake Agreement.**

A grubstake agreement whereby one person agrees to locate mining claims for another must be definite, and the parties claiming an interest in property located by a man on an alleged grubstake must prove that at the time the location was made he was working on the grubstake furnished by them, or pursuant to a specific agreement, usually one by the terms of which they were to furnish him a further grubstake, if the one originally given was exhausted—citing Costello v. Scott, 30 Nev. 43, 93 P. 1.

Eli De Hon and five other plaintiffs sued the defendants, S. H. and Olive Gordon and Charles W. Isaacs, alleging that on or about February 14, 1920, at Anchorage, plaintiffs and the defendant S. H. Gordon made a parol grubstake agreement with the defendant Charles W. Isaacs, whereby it was agreed that the plaintiffs and Gordon should advance to Isaacs $1,500, and with this as a grubstake Isaacs was to go to the Cold Bay oil field on the Alaska peninsula, and during the spring and summer of 1920 prospect for and locate oil claims for the parties to the agreement. The complaint further alleges that Isaacs did locate one claim, called the Isaacs, for the parties to this agreement, but then alleges further that shortly afterwards he located another oil claim, called the

Olive Gordon, in the name of the defendant Olive Gordon for her and himself. The plaintiffs seek to recover this oil claim for the parties to the original grubstake agreement, upon the ground that it was located under the terms of said agreement. The defendants deny that this second oil location was made under the grubstake agreement.

J. S. Truitt, of Anchorage, and Donohoe & Dimond, of Valdez, for plaintiffs.

Arthur Frame, of Anchorage, for defendants Gordon.

L. V. Ray, of Seward, and Leopold David, of Anchorage, for defendant Isaacs.

RITCHIE, District Judge. An important feature of the testimony is the sharp conflict in certain statements of the witnesses. More impressive to my mind is the total lack of ordinary caution displayed by all the parties to the original agreement. It must have been known to most, if not all, of them that grubstake agreements have been a fruitful source of litigation ever since mining began in the Western states. Nevertheless they relied upon an oral discussion at a meeting of the parties for a contract as to the work that was to be done by the defendant Isaacs with the grubstake of $1,500. A few lines of typewriting, drawn by any competent business man, would have avoided this lawsuit. The testimony is so conflicting upon material points that the court is obliged to guess at the real facts. It is my opinion that, if the case were to be tried before half a dozen juries, they would all disagree. The testimony illustrates to a remarkable extent the rule that is familiar to all trial lawyers of considerable experience that, when several men come into court and testify in regard to a past business transaction, everybody remembers the facts his own way. Everybody remembers what is favorable to him, and forgets what is unfavorable, and probably employs his imagination more or less to strengthen his own case, and all of them do this without any willful intention to falsify.

At the outset it may as well be stated that, as to the defendant Olive Gordon, the case of the plaintiffs is disposed of by the grubstake law enacted by the Alaska Legislature in 1913 (chapter 49), which provides that:

"All grubstake contracts and prospecting agreements hereinafter entered into, and which may in any way affect the title of mining locations or other locations made under the mining laws of this territory or of the United States, shall be void and have no effect except as between the parties to such contract or agreement, unless such instrument shall have been filed in the office of the clerk of the district court for the judicial division in which the property affected thereby is located." Section 1.

I may add, however, that in the absence of this statute I would feel obliged to decide in favor of Mrs. Gordon, so far as her half interest in the Olive Gordon claim is concerned, because of the facts in the case, as I will state hereafter. Every lawyer knows the general law of grubstakes. The agreement must be definite, and parties claiming an interest in property located by a man on an alleged grubstake must prove that at the time the location was made he was working on the grubstake furnished by them, or pursuant to a specific agreement, usually one by the terms of which they were to furnish him a further grubstake if the one originally given was exhausted. The latter principle is well set forth in the Nevada case of Costello v. Scott, 93 P. 1. In that case the grubstake claimants had made several advances to Scott at his solicitation, shown by correspondence between them, in which it was agreed that he should make locations and they were to furnish him further money. I think the legal principles set forth in the opinion in that case govern the half interest of Isaacs in the Olive Gordon claim. It is with some difficulty that I extract this conclusion from the conflicting testimony.

The only undisputed facts in the testimony are that plaintiffs advanced $1,500 to Isaacs in February, 1920, before the oil-leasing law was passed by Congress, upon the agreement that he was to go to Cold Bay and locate an oil claim or claims, and that he went there immediately afterwards and located one claim, and returned to Anchorage in the latter part of March. Several receipts were produced, signed by Isaacs, in which he acknowledged the receipt of money from certain of the plaintiffs on account of the grubstake, being the proportion of each. These receipts read: "For grubstake on oil claims in the Cold Bay district, Alaska." Great stress was laid by counsel for plaintiffs upon the fact that these receipts referred to oil "claims" in the plural. Several of the plaintiffs testified that Isaacs was to locate a claim for

each of the parties to the agreement, except for two who took a one-seventh interest together. Isaacs denied this, saying that he was to locate one claim for all of them.

It would be easier to get at the real agreement, but for the fact that at the time it was made the oil-leasing law had not yet passed, and nobody knew whether an oil claim could contain 10 acres or 10,000. As finally passed, a permit may be granted for a lease for 2,560 acres. It seems to me incredible that Isaacs would have agreed to locate six oil claims of indefinite size for $1,500. As argued earnestly by his attorneys, the trip from Kodiak to Cold Bay in February had to be made on a launch and was expensive, not to say slightly dangerous. Very little was known of the oil fields, and much difficulty would naturally be anticipated in finding desirable locations and staking them. A full-sized claim is four square miles. Six claims would be twenty-four square miles. It is unreasonable to suppose that any such locations were contemplated. If the claims were small, not exceeding 160 acres each, it might be a fair conclusion that the receipts meant what the plaintiffs assert, that one claim was to be located for each. Still it would be more natural to make each receipt call for a separate claim, if that was the agreement.

The most reasonable conclusion, as it appears to me, is that Isaacs agreed in substance, if not in precise language, to go to Cold Bay and locate oil claims for the parties until the grubstake was exhausted. That would be the only fair agreement, in view of the uncertainty as to what the law would be. Plaintiff De Hon testifies that when Isaacs returned to Anchorage they met, and Isaacs stated that he had located a claim and was going back to perfect the location. De Hon asked him if he wanted any more money, and he said that he did not. A meeting was held a little later at De Hon's office, at which several of the plaintiffs and Isaacs were present. Isaacs made a brief statement of what he had done, and it is claimed by plaintiffs that he said he was going back to locate more ground, and that something was said about more money; that Isaacs said he had money enough left. Isaacs denies these statements. Gordon said he could not remember that the subject was mentioned.

Isaacs returned to Cold Bay in April. On April 26 he located the Olive Gordon claim for Mrs. Gordon and himself.

On May 1 he relocated the Isaacs claim, as he explained to the plaintiffs, and testified in court that he had taken in too much ground and had to draw in the lines. About the same time he located another claim for one Ted McGowan. He claims that McGowan paid him $800 to locate the claim; that Mrs. Gordon paid him $200 to locate a claim, in which she should have a half interest.

If the parties to this litigation had drawn up a written agreement containing what was claimed by some of them in their testimony, that Isaacs was to explore for and locate oil claims in the Cold Bay district during the summer of 1920, and had recorded it, there would be no doubt of their having an interest in the whole of the Olive Gordon claim. They might perhaps assert at least an equity interest in the Mc-Gowan claim; but the law of 1913 expressly provides that third parties cannot be charged with a grubstake agreement unless it is on record. It is claimed in this case that Mrs. Gordon, being the wife of S. H. Gordon, had full knowledge of the grubstake agreement. I do not regard that as certain. A wife does not necessarily know all about her husband's business transactions, and, even though she knew of it in a general way, she may not have felt that the agreement of the plaintiffs with Isaacs precluded him from doing some locating for other parties. Unless Isaacs was bound by his agreement with the plaintiffs to work exclusively for them, there is no reason why he should not do some locating for others, if he wished to do it. They have fallen far short, in my opinion, of proving that they had any such arrangement with Isaacs. If they did, it was their own fault that they did not put it in writing, so there would be no doubt about it.

Plaintiffs charge that there was a conspiracy between the Gordons and Isaacs to cut off the plaintiffs from any share in anything Isaacs did after locating the first claim. I do not find any such conspiracy is proven, although it is evident from the conduct of the three defendants that they had a suspicion that the plaintiffs would look askance at the proceeding of locating the Olive Gordon claim. As far as possible they kept knowledge of it from the plaintiffs. Nevertheless, as fraud is never presumed, but must be clearly proven, I am obliged to hold that even the secrecy the defendants maintained about the Olive Gordon claim does not prove fraud.

It might easily be that they felt that they were within their rights, but feared that the plaintiffs might take a different view of it. In any case Mrs. Gordon's half interest is protected by the law of 1913, in the absence of proof of willful fraud.

In view of the fact that the plaintiffs have totally failed to prove a definite contract with Isaacs for any length of time, or any definite extent of ground to be located, I would hold that they have no case against him, were it not for the fact that the grubstake they gave him was quite large, was probably not exhausted by his first trip, and may not have been exhausted by the work he did in relocating on the second trip. If Isaacs had produced an account showing that he had fully expended the $1,500 in locating and relocating the Isaacs claim, I would hold that he was relieved of any further obligation to the plaintiffs; but his failure to do this, and the additional fact that he relocated the Isaacs claim after he located the Olive Gordon claim, seem to me to raise the necessary presumption that he was still working on the plaintiffs' grubstake when he located the Olive Gordon claim. For that reason I feel obliged to hold that his half of that claim belongs to the association which owns the Isaacs claim.

Defendants invoke the statute of frauds against plaintiffs' cause of action, and cite Treat v. Ellis, 6 Alaska, 290, decided by Judge Jennings. I agree with the law of that case, but the facts were different. Ellis held the equitable title to mining claims, and plaintiffs asserted an oral agreement to convey an interest to them. Judge Jennings held that the agreement with within the statute of frauds. In the case at bar, plaintiffs claim under a grubstake agreement, and the courts have uniformly held that an oral grubstake agreement is good, unless a statute requires such agreements to be in writing. Mrs. Gordon is protected by such a statute. Mr. Isaacs is not, and, having admitted a grubstake definite as to amount and locality, the obligation was on him to show that the agreement was terminated. The following cases state the law, some deciding for and some against a grubstake claim, according to the particular facts. Lockhart v. Leeds, 195 U. S. 427, 25 S. Ct. 76, 49 L. Ed. 263; Tuppela v. Chichagoff M. Co. (C. C. A.) 267 F. 764; Hendrichs v. Morgan (C. C. A.) 167 F. 106; McGahey v. Oregon King M. Co. (C. C.) 165 F. 86; Cascaden v.

Dunbar (C. C. A.) 157 F. 63; Roberts v. Date (C. C. A.) 123 F. 238; Cisna v. Mallory (C. C.) 84 F. 851; Costello v. Gleeson, 19 Ariz. 532, 172 P. 730; Byrne v. Knight, 12 Cal. App. 56, 106 P. 593; Costello v. Scott, 30 Nev. 43, 93 P. 1, 94 P. 222; Mack v. Mack, 39 Wash. 190, 81 P. 707; Morrow v. Matthew, 10 Idaho, 423, 79 P. 196; Prince v. Lamb, 128 Cal. 120, 60 P. 689; Raymond v. Johnson, 17 Wash. 232, 49 P. 492, 61 Am. St. Rep. 908; Miller v. Butterfield, 79 Cal. 62, 21 P. 543; Moritz v. Lavelle, 77 Cal. 10, 18 P. 803, 11 Am. St. Rep. 229. See, also, Lindley on Mines, § 858.