163 So.2d 760 (1964)
James Hubert WYNNE and Motor Fuel Carriers, Inc., a corporation, Appellants,
v.
David ADSIDE, Appellee.
No. E-210.
District Court of Appeal of Florida. First District.
April 28, 1964.
Rehearing Denied May 28, 1964.
Boyd, Jenerette & Leemis, Jacksonville, for appellants.
William D. Barfield; and Katz & Katz, Jacksonville, for appellee.
*761 CARROLL, DONALD K., Judge.
The defendants in a wrongful death action have appealed from a final judgment entered by the Circuit Court for Duval County based upon a jury verdict.
The question raised by the appellants for our determination is two-fold: whether the trial court erred in instructing the jury that there was no evidence to support the defendants' defense of contributory negligence on the part of the deceased child's custodian, and whether the court erred in failing to charge the jury on the issue of the said custodian's contributory negligence.
This action for damages was filed by the father of an eight-year-old girl who was killed in the evening of October 6, 1961, when she was struck by a tractor-trailer unit owned by the defendant corporation and operated by its employee, the defendant Wynne. The plaintiff alleges in his complaint that his daughter's death was proximately caused by the negligence of the said Wynne in operating the said unit.
To this complaint the defendants filed their answer, denying any negligence on their part and alleging contributory negligence on the part of the plaintiff and the deceased child. More specifically, the defendants allege in their defenses that the plaintiff and his wife, the child's mother, negligently failed to provide "proper adult supervision" over the child at the time and place of the accident, and that the deceased child herself was guilty of negligence that proximately contributed to her death.
At the conclusion of the presentation of the evidence at the trial, the court withdrew from the jury's consideration the defense of contributory negligence on the part of the child's custodian imputable to the plaintiff, and refused to instruct the jury on that defense. The court did, however, charge the jury on the defense of the child's contributory negligence. The jury returned a verdict for the plaintiff in the amount of $15,000.
The trial court refused to include in its charges to the jury an instruction requested by the defendants, reading in pertinent part as follows:
"If you determine that the deceased * * * was not of such age, intelligence and experience to be guilty of contributory negligence, then you should determine whether or not the plaintiff father * * * or whatever adult in whose custody the deceased child was placed, was guilty of contributory negligence, proximately contributing to the deceased child's death. Contributory negligence in this instance would be determined by you after considering whether, in light of the child's age, intelligence, experience, and surrounding circumstances, the father or such adult in whose custody the child was placed, failed to exercise reasonable care, control and supervision of the deceased child."
In their brief on appeal the appellants-defendants contend that the above requested instruction should have been given under the holding of the Supreme Court of Florida in Winner v. Sharp, 43 So.2d 634 (1950).
In the just-cited case, which was an action by a father against a motorist to recover damages for the wrongful death of his infant daughter, the Supreme Court said the following concerning contributory negligence on the part of the child's custodian:
"* * * Contributory negligence results from the mutual, concurring and contemporaneous negligence of the defendant and the plaintiff or their agents. A three year old child is incapable of committing contributory negligence. When parents walk along the highways with their children they are not expected to carry them on a leash or to restrain them by force. They are required to exercise reasonable care for their safety and motorists are required to govern themselves accordingly."
*762 This holding was summarized by the Supreme Court in the later case of Klepper v. Breslin, 83 So.2d 587 (1955) as follows:
"In Winner v. Sharp, Fla. 1950, 43 So.2d 634, we recognized the contributory negligence of a custodian of a minor child as constituting a defense to an action by the father for the wrongful death of a minor. In mentioning this case we are not intending to hold that the mother occupies the position of a third party custodian who might have charge of the child with the consent of the parents for a particular time, although so far as the father is concerned in the normal family relationship it cannot be denied that in his absence and oftentimes in his presence, he recognizes the peculiar qualities of the mother to care for and supervise the conduct of an infant and to that extent he endows her with all of the authority that he himself might enjoy and otherwise assert in the matter of supervising the child and its conduct. Such appears to have been the situation in the case at bar."
In the light of the Supreme Court's holdings in the Winner and the Klepper cases, supra, we think that the above-quoted instruction requested by the defendants at the trial is a correct statement of the rule prevailing in Florida. That does not necessarily mean, however, that the trial court erred in refusing to include it in its instructions to the jury. This is so because the principle is too firmly established to require a citation of authorities that an instruction should not only be a correct statement of the law but it must also correctly state the law applicable to the case being tried and must be predicated upon the evidence adduced at the trial under the issues drawn by the pleadings.
Applying this last principle to the case on appeal, we find that the defense of the custodian's contributory negligence was before the jury under the pleadings, so our remaining task is to determine whether the evidence at the trial justified the court's giving of the said requested instruction and submitting to the jury the said issue of the custodian's contributory negligence imputable to the plaintiff.
At the trial in the instant case the evidence showed that the deceased child's mother and grandmother had the primary control over the child's daily activities, since the father, the plaintiff, was employed out of town. On the evening in question the grandmother had the custody of the child while walking to a grocery store, accompanied by two other children. The grandmother, the deceased child, and one of the other children gave up the trip to the store, retraced their steps, and stopped at the northwest corner of the intersection of Stockton Street (running north and south) and Summit Street (running east and west), in the City of Jacksonville. At that time the said tractor-trailer unit was approaching from the south on Stockton Street, with its lights on and its directional signal indicator indicating a left turn to the west on Summit Street.
The grandmother testified that, while she and the two children were waiting at the corner between the sidewalk and the curbing, the said unit made its left turn at a high rate of speed without slowing down, and that its right front wheel ran over the curbing on the said corner, striking and killing the deceased child.
On the other hand, the defendant Wynne testified that, when he came to the said intersection, his truck lights and a street lamp illuminated the said northwest corner and there was no one on the corner or in the area of the intersection; that he made a slow left turn into Summit Street on the paved area of the street, and, with his trailer still on Stockton Street, he observed an object, which he first thought was a dog, suddenly appear from a hedge and slide down a small embankment and disappear in front of the right front fender of the truck. Wynne further testified that the truck, then moving at about five miles an hour, stopped *763 within three feet; that he got out of the truck, discovered that he had struck a child, and ran two blocks to ask someone to summon the police. He testified that at the time of the accident no other person was present at the intersection, although two or three minutes afterwards, but before the police were summoned, the grandmother came to the scene and accosted him.
Photographs of the scene that were introduced in evidence reveal a hedge and a small embankment at the corner on Summit Street near the point where the deceased child was struck.
The grandmother and the defendant Wynne were apparently the only real eye-witnesses of the tragedy who testified at the trial, although a third witness, a lady who lived across the street, claimed to be an eyewitness. Her testimony, however, on direct and cross examination was self-contradictory, and was apparently corrected on cross to conform generally with the grandmother's testimony. Furthermore, before the trial the said neighbor had given a recorded statement, which was admitted in evidence, that she had not seen the accident occur because she had turned away from the door overlooking the scene in order to go into her house.
Under these circumstances a typical "swearing match" situation evidently developed, in which the jury had the time-honored privilege of deciding which of the witnesses was telling the truth  the grandmother or the defendant Wynne.
If the jury believed the grandmother's testimony, as they evidently did, they could not have found her guilty of negligence proximately contributing to the child's death, for surely there was no negligence in their going together to the grocery store and waiting at a street corner for traffic to pass.
If, on the other hand, the jury had believed the defendant Wynne's version of the events, they would have had to find that he had not been guilty of negligence proximately causing the child's death and hence that the defendants were not liable.
The foregoing analysis of the alternative courses open to the jury is defective in that it overlooks the obvious and basic principle that a jury is not required to accept a witness' testimony in its entirety or wholly reject it, for the jury may accept such portions of a witness' testimony as they may deem credible and consistent with the proven circumstances and probabilities and at the same time reject other portions which they deem incredible or inconsistent with the proven circumstances and probabilities. This is a point rarely discussed in court opinions, although concededly it plays a vital role in the concept of the jury's function as the trier of the facts in actions at law under our court system and jurisprudence. While we have found no Florida case specifically recognizing this principle, several courts in other jurisdictions have found occasion to do so. The view of such courts is reflected by a statement in 88 C.J.S. Trial § 214, p. 490, to the effect that in a jury trial, when there are contradictions or inconsistencies in the testimony of a particular witness, "* * * it is for the jury to determine which portion of his evidence or version of the matter they will believe."
Cited in support of the quoted proposition are cases from five states. One of these cases is Keyser v. San Diego Electric Ry. Co., 16 Cal. App.2d 48, 60 P.2d 136 (1936), in which the California District Court of Appeal said: "The usual rule is that the jury may believe a part of a witness' testimony and disbelieve other parts."
While we have found no Florida case specifically holding that a jury may believe a part of a witness' testimony and disbelieve other parts of his testimony, we think that such a holding follows logically from the established rule that the credibility of a witness is a question for the jury to decide. One of the best statements of this latter rule is the following from the opinion of the Supreme Court of Florida in Caledonian *764 American Insurance Co. v. Coe, 76 So.2d 272 (1954):
"The rule controlling in cases like this is stated in Shields v. Vermont Mut. Fire Ins. Co., 102 Vt. 224, 147 A. 352, and is to the effect that testimony which is not impossible, though it may be unreasonable, inconsistent, or contradictory, is for the jury's consideration. If there is any substantial evidence supporting plaintiffs' claim, the question is for the jury, and where intelligent and fair-minded men may reasonably differ in the conclusion to be drawn from the evidence, it cannot be said there is no evidence to support plaintiffs' claim. See also Grasso v. Glens Falls Ins. Co. of Glens Falls, N.Y., 133 Neb. 221, 274 N.W. 569; Clouse v. St. Paul Fire & Marine Ins. Co., 152 Neb. 230, 40 N.W.2d 820, 15 A.L.R.2d 1017; Voelker v. Combined Ins. Co. of America, Fla., 73 So.2d 403."
An expression of the same rule in language more helpful in our present consideration may be found in Hampton v. State, 50 Fla. 55, 39 So. 421 (1905), as follows:
"* * * Because a cross-examination shakes the credibility, or demonstrates the inaccuracy and unreliability, of the evidence deposed by a witness on his direct examination, this furnishes no reason for striking out such evidence in toto; but, if it is otherwise proper evidence, it, with its expose by the cross-examination, remains for consideration by the jury at its worth."
Applying the foregoing reasoning to the case at bar, we think that the jury, as reasonable men, might have believed the grandmother's testimony that, while she had the custody of the deceased child with the parents' permission, when she, her granddaughter, and the second child walked together to the corner in question, and her testimony that the defendants' tractor-trailer unit made its left turn at a high rate of speed without slowing down, so that its right front wheel ran over the curbing on the same corner and struck the deceased child, but otherwise disbelieving the grandmother's testimony; and that the jury also might have reasonably believed the defendant Wynne's testimony that he saw no one at the intersection but, when he made the left turn, he observed an object, which he thought was a dog, suddenly appear from a hedge and slide down a small embankment and disappear in front of the right front fender of the tractor, and that the grandmother first appeared on the scene two or three minutes later, but otherwise disbelieved Wynne's testimony. Upon the basis of the testimony so believed by the jury, we think that the jury, as reasonable men, could have concluded that the defendants were guilty of negligence proximately causing the child's death; and further that the defendants were liable in damages for the death  unless the jury should also find that the plaintiff or his custodial agent (the grandmother) was guilty of negligence that proximately contributed to the death  by leaving the children unattended at a dangerous intersection, by permitting the deceased child to slide down the embankment into the street, or by otherwise failing to supervise the child's activities in the interest of safety. In such circumstances it is easy to see how valuable the right would be to the defendants to have the question of the custodian's contributory negligence submitted to the jury, yet, in the case at bar, the trial court withdrew the defense of such contributory negligence from the jury's consideration, and refused to instruct them on the said defense.
No trial rule is more firmly settled than that each party to a trial at law has a right to have the court instruct the jury as to the law applicable to the facts in evidence introduced under the issues as made by the pleadings. See, among many other cases, Seaboard Air Line Ry. Co. v. Kay, 73 Fla. 554, 74 So. 523 (1917).
As we have pointed out above, in the present case the issue of the custodian's *765 contributory negligence was made by the pleadings and there was sufficient evidence at the trial from which the jury could have reasonably concluded that the grandmother was negligent in permitting the deceased child to slide down an embankment leading to a public street in the face of oncoming traffic or in otherwise failing properly to supervise the child, and that such negligence was imputable to the plaintiff, who had, along with his wife, given the child's custody to the grandmother.
Under our court system and jurisprudence it is wholly immaterial in a law action whether the trial court or the appellate court would have reached different conclusions from those of the jury as to questions of fact under the evidence presented at a trial and the issues made by the parties' pleadings. Neither court has the power to substitute its judgment concerning the facts for that of the jury, despite the fact that the court has the power and vital duty to see that the jury's conclusions are lawfully permissible from the evidence adduced at the trial. In performing this last duty a trial court must instruct the jury on the law as to the conclusions that are legally deducible under the evidence and the issues, including conclusions that the judge himself would likely not reach if he were privileged to sit as a member of the jury.
For the foregoing reasons we think that, under a view which the jury as reasonable men might have taken of the evidence at the trial under the issues made by the pleadings, the issue of the custodian's contributory negligence should have been submitted to the jury for their determination, with instructions concerning the law applicable to such defense.
The final judgment appealed from, therefore, must be, and it is, reversed, and the cause is remanded for a new trial.
Reversed and remanded.
STURGIS, C.J., and RAWLS, J., concur.