# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| M.R., an individual,<br><br>       Respondent,<br><br> v.<br><br>STATE OF WASHINGTON; YAKIMA VALLEY COMMUNITY COLLEGE, a public corporation; CODY BUTLER, an individual;<br><br>       Petitioners. | No. 56781-4-II<br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — In 2019 MR sued the State of Washington, Yakima Valley Community College, and Cody Butler (collectively the State) for a variety of claims arising from sexual abuse she alleged that she experienced in 2000 when she was 17 years old and from 2001 to 2003 when she was 18 years old or older. The State moved for summary judgment based on the statute of limitations. The trial court denied the motion for summary judgment after concluding that the childhood sexual abuse statute of limitations, RCW 4.16.340, applied to all of MR's claims, including those based on acts that occurred after MR turned 18.

The trial court certified the issue of whether RCW 4.16.340 applies to claims based on sexual abuse that began when MR was under 18 and continued after she turned 18 for immediate review under RAP 2.3(b)(4). A commissioner of this court granted discretionary review of the certified issue.

The State also argues that if the summary judgment order is reversed, then (1) the common law discovery rule does not apply to MR's claims based on the alleged acts that occurred after she turned 18 because she failed to make further diligent inquiry to ascertain the scope of the actual harm, and (2) MR's remaining claim of child sexual abuse fails because she fails to establish causation.

We hold that the plain language of RCW 4.16.340 demonstrates that the childhood sexual abuse statute of limitations applies only to claims based on acts of childhood sexual abuse occurring before the plaintiff turns 18. Accordingly, we reverse the summary judgment order and remand to the trial court for further proceedings.

FACTS[1]

I.    BACKGROUND

In the summer of 2000, just before starting her senior year in high school, 17-year-old MR participated in a club basketball tournament with hopes of being recruited to play college basketball. While at the gym, the club director introduced MR to Cody Butler, an assistant women's basketball coach from Yakima Valley Community College (YVCC).

The club director and Butler began to make comments about MR's body, including her abs, buttocks, and chest. After the director commented about MR's abdominal muscles, Butler put his hand on MR's stomach and "trace[d] his hand down the line of the V on [her] stomach to the top of [her] public [sic] area, the top of [her] basketball shorts." Clerk's Papers (CP) at 53.

---

[1] Because we are addressing a summary judgment motion, we recount the facts in the light most favorable to the nonmoving party, MR. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

MR did not consent to Butler touching her, and she found the men's comments and the touching uncomfortable and confusing. But because the men acted as if their behavior was normal and she wanted a basketball scholarship, she tolerated it.

MR turned 18 in October 2000. In 2001, sometime before her high school graduation, Butler invited MR to visit the YVCC campus.

During this visit, MR attended practice, and Butler commented about the other players' appearances. These comments included comments about the other players' "ass[es]" and "tits." *Id.* at 126. She had some physical contact with Butler during practice, and he placed his hand on the small of her back while she was on the sideline to make her feel more comfortable. At the time, this contact did not make MR feel uncomfortable.

Butler also gave one of the team members some money and told her to "make sure that [MR] had a good time that night." *Id.* at 124. The team member used Butler's money to buy alcohol and took MR to a party at the "baseball house." *Id.* Because MR wanted to impress the basketball team, she did not feel like she could say no, and she drank until she blacked out. The next day Butler noticed that she was hungover and joked about it with the other team member, stating that they had shown MR a really good time and that she would certainly now choose to come to YVCC.

MR did not feel uncomfortable during this visit. But she later came to believe that Butler's contact with her and encouraging her to drink was inappropriate.

Butler offered MR a basketball scholarship a week after her visit to YVCC. MR accepted the offer and arrived at the school in August 2001. MR attended YVCC and was a member of the basketball team until 2003. During this time, Butler spent time alone with MR, and, according to MR, treated her differently from the other players by giving her special privileges.

According to MR, Butler would frequently engage in unwanted and inappropriate physical contact with her by pressing his erect penis into her during training and by pulling her into his lap while he had an erect penis. MR stated that she was uncomfortable with this contact, but because she was inexperienced she believed that this was "how college coaches act." *Id.* at 57.

Butler would also ask MR to give him neck massages, and he would give her massages in his office. At one point, the YVCC athletic director walked in on them in Butler's office while Butler was giving MR a neck massage at 9:00 PM. Butler would also take MR out to eat and take her to his house to eat, watch television, and practice yoga. He also provided her with alcohol on several occasions.

Butler's behavior made MR uncomfortable, and she started to skip practice to avoid him. But she never complained about his behavior to anyone while at YVCC because she "had no idea that it was wrong," and she believed that he loved her. *Id.* at 130.

MR's teammates, however, observed that MR's relationship with Butler was inappropriate and believed that Butler and MR were in an intimate relationship. Some of MR's teammates told her that her relationship with Butler was wrong and complained to the athletic director. One of MR's teammates also told her "that what [Butler] was doing was inappropriate" after walking in on MR and Butler in his office. *Id.* at 65. But MR "didn't want to listen to her," and their friendship ended. *Id.*

Apparently in response to the complaint, a team meeting was held. During this meeting, without first warning MR, Butler announced that he was not sleeping with MR. MR was "[m]ortified" by this announcement, and she believed that her relationship with Butler had damaged her relationship with the other team members. *Id.* at 62.

4

In 2003, MR accepted a basketball scholarship at a four-year university in Montana. In 2004, MR visited Butler in Nevada. During this visit, they drank together and had sexual intercourse at least twice.

After leaving YVCC, MR became drug and alcohol addicted, she suffered from an eating disorder, and she ended up homeless and in an abusive relationship. She was eventually incarcerated in 2009.

After her release from prison in 2012, MR earned her master's degree, married, had three children, and worked full time. MR asserted that during this time she attempted to "numb[ ] [herself] to forget about the dark chapter of [her] life." *Id.* at 192. And she asserted that a series of life stressors prevented her from being mentally or physically capable of seeking the help she knew she needed.

## II.    LAWSUIT

In October 2018, MR became aware that the FBI was investigating the director of the basketball club she had attended in 2001 "for sexual misconduct with a former basketball player." *Id.* This news caused her to think about what had happened between her and Butler in a new light.

"It was at this time in 2018 that [she] started thinking about [what had happened to her] with a clearer head space because [she] was no longer in a cycle of sex, drugs, eating disorders, and alcohol abuse." *Id.* at 193. She began to realize what had happened to her and started the process of learning how she had been affected and how her experiences had harmed her. In early 2019, MR started therapy, and she began to understand how Butler's abuse had affected her in ways she had never before considered.

In May 2019, MR filed suit against the State. MR alleged negligence, sexual discrimination, and negligent infliction of emotional distress claims against the State of Washington, Yakima Valley Community College, and Butler and outrage and assault claims against Butler in his individual capacity. Her initial claims were based on her contacts with Butler from 2001 through 2003. She later amended her claims to include the touching incident that occurred in 2000, when she was 17 years old.

### III. SUMMARY JUDGMENT

The State moved for summary judgment. Regarding the claims related to the incidents that occurred between 2001 and 2003, they argued that the two- and three-year statutes of limitations, RCW 4.16.080(2) and RCW 4.16.100(1), barred these claims and that the common law discovery rule did not apply. Regarding MR's claims based on the 2000 incident, they argued that MR failed to establish questions of fact as to whether Butler was acting as an agent for YVCC, whether the incident was a "reportable offense," or whether the incident was a proximate cause of any damages or injuries. CP at 44.

In support of its argument that MR had failed to demonstrate that the 2000 incident was a proximate cause of any damages or injury, the State filed a partial transcript of the deposition of Phoebe Mulligan, a social worker who had conducted a forensic psychological evaluation of MR. During this deposition, the State's counsel asked Mulligan if the 2000 incident caused MR's anxiety and posttraumatic stress disorder. Mulligan responded that she did not know. Counsel also asked Mulligan if the 2000 incident had caused MR's depression, eating disorder, or substance abuse. Mulligan responded that it did not.

6

MR responded that the common law discovery rule applied to the incidents that occurred after she turned 18 and that RCW 4.16.340, the childhood sexual abuse statute of limitations, applied to the incident that occurred when she was 17 and to any claim or cause of action "where the gravamen of the action" was the childhood sexual abuse. *Id.* at 228. Among the several exhibits that MR filed in support of her opposition to summary judgment was a declaration from Mulligan.

Mulligan disputed the State's characterization of her deposition testimony as establishing that the 2000 incident was not a proximate cause of any damages or injuries because Mulligan was unable to say that the 2000 "grooming behavior" was the cause of any specific harm. *Id.* at 197.

Mulligan stated that when a child or young person is exposed to "a prolonged period of adverse traumatic events, in multiple forms, [they] typically react negatively to the entire prolonged period of adverse traumatic events." *Id.* at 198. They also perceive that "all trauma-producing events are . . . one continuous negative experience." *Id.* Mulligan further stated that it was "generally understood in mental health that the negative effects of trauma-producing events are cumulative" and that "each event contribut[es] additional harm or damage." *Id.* at 198-99. She asserted that to understand the impact of the sexual abuse on MR, all of the events, including "the grooming that eventually allowed the sexual abuse to materialize" must be considered." *Id.* at 199.

Mulligan then opined that MR was more probably than not "significantly impacted by [the] four continuous years of sexual abuse, including the sexual abuse when she was seventeen years old." *Id.* at 200. She further opined that no single incident caused the damages, and that "[i]t is not possible to parse out which specific trauma-producing events caused which specific ailment that M.R. now suffers from." *Id.*

The trial court denied the State's summary judgment motion after concluding that RCW 4.16.340 applied to all claims because all of the claims were based on "a series of events by the same alleged perpetrator" that began before MR was 18 and the expert witnesses had stated that it was "impossible to segregate the harm." Verbatim Rep. of Proc. at 36. The court stated that because this was "a continuous series of events," it was "prudent to apply the childhood sex abuse statute of limitations to the events." *Id.* But the court noted that if the childhood sex abuse statute did not apply, it would "be ruling the other way" because MR did not establish the reasonable diligence that was required under the common law discovery rule. *Id.* at 37.

## IV.    DISCRETIONARY REVIEW

The trial court granted the State's subsequent request for certification of the summary judgment order for immediate review under RAP 2.3(b)(4). Our commissioner granted the motion for discretionary review of the statute of limitations issue under RAP 2.3(b)(4), which permits review of the controlling question of law certified by the trial court.

## ANALYSIS

## I.    RCW 4.16.340

The issue the commissioner accepted for discretionary review is whether RCW 4.16.340's statute of limitations applies to MR's claims based on allegations of adult sexual abuse when these acts are part of a continuing pattern of abuse that started when she was under 18. There is no case law addressing the application of RCW 4.16.340 when some of the acts of sexual abuse occurred when the plaintiff was under 18 and other acts occurred after the plaintiff turned 18. Thus, this issue is an issue of first impression.

The State argues that the trial court erred when it concluded that RCW 4.16.340's statute of limitations applied to all of MR's claims. They contend that the plain language of RCW 4.16.340 establishes that the child sexual abuse statute of limitations applies only to acts that occur before the plaintiff turns 18 even if the later "abuse was a continuation of sexual abuse that began when [the plaintiff] was a minor." State's Br. at 21.

MR argues that the plain language of RCW 4.16.340 does not limit the application of the statute to claims for acts that occurred when the plaintiff was under 18. MR contends that "[t]he only limitation [the statute] imposes is that the 'injury' for which recovery is sought must be caused by childhood sexual abuse" and, apparently, that "Butler's subsequent, continuing sexual abuse after she turned 18" amounts to an "injury" caused by childhood sexual abuse. Br. of Resp't at 2 (emphasis omitted), 35.

We agree with the State.

A.     LEGAL PRINCIPLES

The interpretation of a statute is an issue of law that this court reviews de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our goal when interpreting a statute is to "ascertain and carry out the Legislature's intent." *Id.* If the meaning of the statute is plain on its face, we "must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10. We discern a statute's plain meaning from the ordinary meaning of the language in the context of related statutory provisions, the entire statute, and related statutes. *Id.* at 9-12.

If a statute is susceptible to more than one reasonable interpretation after reviewing the plain meaning, it is ambiguous. *Id.* at 12. If a statute is ambiguous, this court may "resort to aids [of] construction, including legislative history." *Id.*

B.    CHILDHOOD SEXUAL ABUSE STATUTE OF LIMITATIONS AND LEGISLATIVE FINDINGS

RCW 4.16.340 establishes the statute of limitations for claims based on acts of childhood sexual abuse. The statute provides:

> (1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
> (a) Within three years of the act alleged to have caused the injury or condition;
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
> PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.
>
> (2) The victim need not establish which act in a series of continuing sexual abuse or exploitation incidents caused the injury complained of, but may compute the date of discovery from the date of discovery of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse or exploitation.
>
> . . . .
>
> (4) For purposes of this section, "child" means a person under the age of eighteen years.
>
> (5) As used in this section, "childhood sexual abuse" means any act committed by the defendant against a complainant who was less than eighteen years of age at the time of the act and which act would have been a violation of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the act was committed.

RCW 4.16.340.

As part of its most recent amendment to RCW 4.16.340 in 1991, which added subsection

(1)(c) to the statute, the legislature made the following intent findings:

> The legislature finds that:
> (1) Childhood sexual abuse is a pervasive problem that affects the safety and well-being of many of our citizens.
> (2) Childhood sexual abuse is a traumatic experience for the victim causing long-lasting damage.
> (3) The victim of childhood sexual abuse may repress the memory of the abuse or be unable to connect the abuse to any injury until after the statute of limitations has run.
> (4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.
> (5) Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later.
> (6) The legislature enacted RCW 4.16.340 to clarify the application of the discovery rule to childhood sexual abuse cases. At that time the legislature intended to reverse the Washington supreme court decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986).
> It is still the legislature's intention that *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986) be reversed, as well as the line of cases that state that discovery of any injury whatsoever caused by an act of childhood sexual abuse commences the statute of limitations. The legislature intends that the earlier discovery of less serious injuries should not affect the statute of limitations for injuries that are discovered later.

LAWS OF 1991, Ch. 212 § 1.

C.    ANALYSIS

RCW 4.16.340(1) states that it applies to "injur[ies] suffered as a result of childhood sexual

abuse." The statute defines "childhood sexual abuse" as "any act committed by the defendant

against a complainant who was less than eighteen years of age at the time of the act." RCW

4.16.340(5). This language shows that the sexual abuse at issue must be an "act" committed against

a plaintiff before the plaintiff turned 18. Nothing in this language suggests that the statute also

applies to any acts that occurred after the plaintiff reaches the age of 18.

RCW 4.16.340(1) permits a plaintiff to seek relief for all *injuries* that are the result of an act of childhood sexual abuse, regardless of when those injuries occurred. But this does not extend the statute of limitation on *claims* arising from later acts of sexual abuse that occurred when the plaintiff was an adult.

MR contends that "[t]he only limitation [the statute] imposes is that the 'injury' for which recovery is sought must be caused by childhood sexual abuse" and that "Butler's sexual abuse of M.R. after she turned 18" qualifies as an "injury" caused by the childhood sexual abuse because the 2000 incident facilitated the later abuse. Br. of Resp't at 2 (emphasis omitted), 36. But even though an act of grooming may facilitate later abusive acts, the grooming does not *cause* the subsequent abusive act. The later act is an independent intentional act. Accordingly, this argument is not persuasive.

MR also filed a statement of additional authorities (SAA) referring this court to *Wolf v. State*, ___ Wn.3d ___, 534 P.3d 822 (2023). MR asserts that *Wolf* demonstrates that "recoverable injuries under RCW 4.16.340 can have multiple causes," and argues that Butler's "abuse" and "conduct" in 2000 "caused his continuing sexual abuse of [MR] past age 18." SAA at 1. But as we discuss above, MR's assertion that the 2000 abuse caused the later abuse is not persuasive. And *Wolf* is not helpful here because it does not address a continuing course of conduct occurring over a time period during which the plaintiff was both a minor and an adult.

The only part of RCW 4.16.340 that could potentially be read to extend the statute to acts of sexual abuse committed against the plaintiff after the plaintiff turned 18 is subsection (2). As stated above, that subsection provides:

> The victim need not establish which act in a series of continuing sexual abuse or
> exploitation incidents caused the injury complained of, but may compute the date

of discovery from the date of discovery of the last act by the same perpetrator which is part of a common scheme or plan of sexual abuse or exploitation.

RCW 4.16.340(2).

Although this subsection acknowledges that sexual abuse can occur as a series of acts taking place over a period of time, it addresses how to compute the date of discovery under such circumstances. It does not state that every act that occurs during the course of the common scheme or plan of sexual abuse that occurs after the plaintiff turns 18 qualifies as an act of childhood sexual abuse.

Had the legislature intended this result, it could have used similar language regarding an ongoing "common scheme or plan of sexual abuse or exploitation" in its definition of "childhood sexual abuse" rather than limiting the meaning of that term to "any act committed by the defendant against a complainant who was less than eighteen years of age at the time of *the act*." RCW 4.16.340(2), (5) (emphasis added).[2] The legislature certainly knew how to use language that would encompass multiple acts in a common scheme or plan, but it chose not to do so when defining the scope of "childhood sexual abuse" to which the more generous statute of limitations applies.

The conclusion that RCW 4.16.340 does not apply to acts committed after the plaintiff turns 18 that occur during the course of a common scheme or plan of sexual abuse is also consistent with the legislature's 1991 intent statement. The intent statement is specific to childhood sexual abuse; it does not mention the inclusion of any acts that might occur as part of a common scheme or plan of sexual abuse or exploitation that continues into adulthood. This suggests that the

---

[2] There are no cases applying this subsection in the context of continuing sexual abuse that took place over a span of time during which the plaintiff was both under and over 18 years of age.

legislature did not intend the special statute of limitations to apply outside of the context of acts committed while the plaintiff was under 18.

Additionally, the legislature's intent statement demonstrates that RCW 4.16.340 was intended to address the risks that a young person may not understand that they were abused or that a young person would not be able to connect a specific act of abuse to the resulting injury. These risks diminish as the person ages. And in enacting RCW 4.16.340, the legislature made a policy decision to draw the line regarding when this risk was sufficiently reduced to justify imposing the adult statute of limitations at 18 years of age. Interpreting RCW 4.16.340 to apply to acts that occurred when the plaintiff was 18 or older usurps the legislature's policy decision.

We hold that the plain language of RCW 4.16.340 demonstrates that the childhood sexual abuse statute of limitations applies only to claims based on acts of childhood sexual abuse occurring before the plaintiff turns 18.[3] Accordingly, the trial court erred when it concluded that RCW 4.16.340's statute of limitations applied to the claims arising out of the alleged acts of abuse that occurred after MR turned 18.

We reverse the summary judgment order, and remand for further proceedings.

## II.     ADDITIONAL ISSUES

In addition to the statute of limitations issue addressed above, the State argues that (1) the common law discovery rule does not apply to MR's claims based on the alleged acts that occurred after she turned 18 because she failed to make further diligent inquiry to ascertain the scope of the

---

[3] That is not to say that MR cannot argue to the jury that she is entitled to all damages proximately caused by the act that occurred before she turned 18. And this proximate cause inquiry must be understood in the context of the entire course of conduct, including those incidents that occurred after MR turned 18.

actual harm, and (2) MR's remaining claim of child sexual abuse fails because she fails to establish causation. We do not reach these issues.

Our commissioner granted discretionary review of the issue certified by the trial court regarding whether the statute of limitations in RCW 4.16.340 applied to all of MR's allegations of sexual abuse under RAP 2.3(b)(4). The State's additional arguments fall outside the order granting discretionary review. Because the commissioner did not grant discretionary review on any additional issues, we do not reach them. RAP 2.3(e); *Johnson v. Recreational Equip., Inc.*, 159 Wn. App. 939, 959 n.7, 247 P.3d 18 (2011) (holding that the appellate court may specify the issue or issues as to which discretionary review is granted).

We reverse the summary judgment order and remand to the trial court for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

GLASGOW, C.J.

PRICE, J.