[Cite as *State ex rel. Hettinger v. Indus. Comm.*, 2017-Ohio-7899.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Ronald L. Hettinger, Jr., | : | |
| Relator, | : | |
| v. | : | No. 16AP-751 |
| Ferrellgas, Inc., and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on September 28, 2017

**On brief:** *Craigg E. Gould,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Ronald L. Hettinger, Jr., commenced this action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied his application for permanent total disability ("PTD") compensation, and to issue an order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that Dr. Reynolds' opinion was some evidence that relator's allowed psychological condition would

not prevent him from sustained remunerative employment. The magistrate also found that the commission was not required to explain why it did not rely on the report of Dr. Sed, which relator offered in support of his PTD application. Citing *State ex rel. Noll. v. Indus. Comm.*, 57 Ohio St.3d 203 (1991) and *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983), the magistrate noted that the commission is only required to identify the medical evidence on which it relies and is not required to cite all the evidence it considered. Therefore, the magistrate determined that the commission did not abuse its discretion when it denied relator's PTD application. Accordingly, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In his first objection, relator argues that the commission's failure to address Dr. Sed's report indicates that the commission did not consider it. Relator also argues that the commission was required to discuss Dr. Sed's report and to explain why it was rejected. Both of these arguments are misplaced.

{¶ 4} As noted by the magistrate, the commission is only required to state the evidence upon which it relied and to briefly explain the basis for why a claimant is or is not entitled to the requested benefits so that there can be a meaningful review of that decision if such review is sought. The commission is not required to identify evidence that it found unpersuasive. Nor is it required to explain why that evidence was rejected. *Noll.*

{¶ 5} Relator contends that *State ex rel. Ritzie v. Reece-Campbell, Inc.*, 146 Ohio St.3d 259, 2015-Ohio-5224 required the commission to explain why it rejected Dr. Sed's report. We disagree. As the commission points out, in *Ritzie*, the only medical evidence of the alleged disability was from the treating physician. There was no contrary medical evidence before the commission. Under those circumstances, *Ritzie* required the commission to explain why it rejected the only medical report in the file. In the case at bar, however, there was conflicting medical evidence before the commission. Under those circumstances, the commission was only required to state the evidence on which it relied and to briefly explain why relator was not entitled to PTD compensation. The commission satisfied those requirements. Therefore, we overrule relator's first objection.

{¶ 6} In his second objection, relator argues that the magistrate should have found the commission's reliance on Dr. Reynolds' report was an abuse of discretion.

Relator contends that Dr. Reynolds' report is not evidence on which the commission could rely because Dr. Reynolds' report was issued in the context of a temporary total disability ("TTD") application and because the report was allegedly stale. Again, we disagree.

{¶ 7} As noted by the commission, Ohio Adm.Code 4121-3-34(C)(1) permits the commission to consider the report of a medical examination that was conducted within 24 months of the filing of the PTD application. Dr. Reynolds' examination of relator was conducted well within that timeframe. Therefore, Dr. Reynolds' report was not stale. Nor is it significant that Dr. Reynolds examined relator in the context of a TTD application. If relator is capable of returning to his former position of employment, he is capable of sustained remunerative employment. For these reasons, we agree with the magistrate that the commission did not abuse its discretion when it relied on Dr. Reynolds' report in denying relator's PTD application. Therefore, we overrule relator's second objection.

{¶ 8} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

TYACK, P.J, and DORRIAN, J., concur.

————————————

## <u>APPENDIX</u>

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Ronald L. Hettinger, Jr., | : | |
| Relator, | : | |
| v. | : | No. 16AP-751 |
| Ferrellgas, Inc., | : | (REGULAR CALENDAR) |
| and | | |
| Industrial Commission of Ohio, | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on May 12, 2017

*Craigg E. Gould,* for relator.

*Michael DeWine,* Attorney General, and *Shaun P. Omen,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 9} Relator, Ronald L. Hettinger, Jr., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his application for permanent total disability ("PTD") compensation, and ordering the commission to find that he is entitled to that award.

<u>Findings of Fact</u>:

{¶ 10} 1. Relator sustained a work-related injury on September 23, 2008 and his workers' compensation claim has been allowed for the following conditions:

> Right shoulder sprain; cervical sprain; tear right supraspinatus; tear right infraspinatus; substantial aggravation of pre-existing adjustment disorder with depressed mood; chronic post surgical pain syndrome.

{¶ 11} 2. Relator underwent shoulder surgery on April 24, 2009. No tears were noted over the infraspinatus or supraspinatus area; however, relator did have a biceps tenotomy, subacromial decompression, and labral repair.

{¶ 12} 3. On November 19, 2015, relator filed his application for PTD compensation. According to his application, relator was 43 years of age, graduated from high school in 1991, learned welding, and was able to read, write, and perform basic math. Relator's employment history includes truck driver, material handler, operating a glazing machine, operating a dump truck, and some time as a warehouse supervisor.

{¶ 13} 4. Relator submitted a report, dated September 3, 2015, from Charles E. Adkins, C.N.P. Adkins noted that relator indicated his right shoulder pain remained at 7/10 and radiated down his right arm to his fingertips. Adkins provided physical findings on examination noting extremely limited range of motion of the right shoulder. Adkins also noted that relator's recommended work status was restricted duty and the effective date for this work status was August 6, 2015.

{¶ 14} 5. Relator submitted the November 30, 2015 Medco-14 completed by Adkins, who opined that relator could not currently return to his former position of employment, that he had been unable to perform that job since November 30, 2015, and estimating that he would be able to return to the job that he held at the time he was injured as of January 4, 2016.

{¶ 15} 6. Steven S. Wunder, M.D., examined relator concerning the limitations related to his allowed physical conditions. In his February 3, 2016 report, Dr. Wunder identified the allowed conditions in relator's claim, reviewed the history of his treatment, provided his physical findings on examination, specifically noting that the "range of motion of the right shoulder was not valid and could not be utilized for an impairment rating [because relator] was not cooperative with range of motion." Dr. Wunder was unable to obtain three consecutive readings within five degrees of each other noting that relator "generated more strength on resisted movement than with manual motor muscle testing."

{¶ 16} In discussing relator's medical treatments, including surgery, Dr. Wunder noted that the surgical notes indicate that there had been no evidence of rotator cuff tear, but that an MRI taken December 10, 2009 revealed a "type 3 acromion," "moderate degenerative changes over the AC joint," "moderate tendinosis of the supraspinatus and infraspinatus," "mild degenerative changes of the glenohumeral joint," "an intramuscular cyst," and "a diffuse glenoid labrum tear."

{¶ 17} Ultimately, Dr. Wunder opined that relator's allowed physical conditions had reached maximum medical improvement ("MMI") and that he had an 8 percent whole person impairment, specifically noting that, relator's claim was allowed for tears in the right supraspinatus and right infraspinatus, which surgery revealed were not present. Dr. Wunder opined that relator had 0 percent impairment of his right shoulder when concerning the allowed conditions, and that relator was capable of performing medium level work.

{¶ 18} 7. The stipulation of evidence contains three psychological reports which were completed within two years of the filing of relator's application for PTD compensation. In his November 21, 2013 report, Donald J. Tosi, Ph.D., interviewed relator and conducted psychological testing. Dr. Tosi opined that the psychological testing revealed a strong tendency towards symptom magnification and that test results should be interpreted with caution. In his opinion, the allowed condition of adjustment disorder alone would not preclude relator from returning to his former position of employment noting that he was able to function under low to moderate work stress conditions.

{¶ 19} 8. A psychiatric evaluation was also conducted by Mark E. Reynolds, M.D. In his January 13, 2015 report, Dr. Reynolds identified the allowed conditions in relator's claim and discussed the medical evidence submitted to him. Dr. Reynolds opined that relator had bipolar disorder, noting that it was "evident the claimant has been diagnosed and treated for Bipolar Disorder." Due solely to the allowed condition of adjustment disorder with depressed mood, Dr. Reynolds opined that relator could return to his former position of employment.

{¶ 20} 9. Relator was also examined by Chad M. Sed, Ph.D. In his January 8, 2016 report, Dr. Sed identified the allowed conditions in relator's claim, discussed the history of

his treatment, and found that relator had a mild impairment in activities of daily living, and a moderate impairment in social functioning, concentration, persistence and pace, as well as adaptation. Dr. Sed opined that relator had reached MMI and assessed a 25 percent whole person impairment. Ultimately, Dr. Sed opined that based solely on the allowed conditions in the claim, relator was incapable of work.

{¶ 21} 10. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on May 11, 2016. The SHO relied on the medical reports of Drs. Wunder and Reynolds and found that relator was capable of performing sedentary, light, and medium sustained remunerative employment based solely on the allowed physical conditions in his claim and that, from a psychological standpoint, considering only the allowed psychological conditions in his claim and not the unrelated bipolar disorder, relator was capable of returning to his former position of employment.

{¶ 22} Thereafter, the SHO discussed the non-medical disability factors and found that relator's current age of 44 years was a positive vocational factor. The SHO also found that relator was a high school graduate, had completed a two-year vocational program in welding, was able to read, write, and perform basic math, and had used a computer at his former positions of employment. As such, the SHO found relator's education was also a vocational factor. The SHO found that relator's prior work experience was a neutral to positive factor because it indicated that he had generally average aptitudes and temperaments and that he had transferrable skills including the ability to perform repetitive duties, work with precise tolerances, operate small and large equipment and computers, the ability to learn, understand, and comprehend new concepts, follow instructions, perform production work under quality standards, relate to coworkers, supervisors, and customers.

{¶ 23} The SHO also discussed relator's vocational efforts, noting as follows:

> Additionally, the Injured Worker was referred for consideration of vocational rehabilitation services on three occasions, but his case was closed: 1) on 10/23/2010 when the Injured Worker, after completing work conditioning and JSST, withdrew after a lackluster effort at job search activities; 2) on 11/12/2013 due to non-support by the physician of record; and 3) on 07/02/2015 due to being found not feasible due mainly to a suspended driver's license

(transportation issue) and a lack of effort and attitude toward participation in further rehabilitation services.

* * *

As an additional and alternative basis for the denial of this application, the Staff Hearing Officer invokes the rule of law as found in the decisions of [*State ex rel. Speelman v. Indus. Comm.*, 73 Ohio App.3d 757 (10th Dist.1992)], [*State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 73 Ohio St.3d 525 (1995)], [*State ex rel. Bowling v. Natl. Can Corp.*, 77 Ohio St.3d 148 (1996)] and [*State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250 (1997)], which indicate that an otherwise able Injured Worker is required to attempt any and all forms of vocational rehabilitation, retraining or reeducation that would assist in or permit a return to work. In this case, the Injured Worker has not made any sustained efforts at any of these types of vocational or educational services since he last worked on 04/23/2009, although he remains eligible for consideration even at this time. The Staff Hearing Officer particularly notes a pattern as found in the medical and vocational reports on file which indicates that the Injured Worker has not demonstrated or provided his best efforts in these areas. Specifically, noted are the following: 1) the 06/30/2010 functional capacities evaluation indicated that the results were compromised as the Injured Worker provided a marginally reliable effort; 2) the 08/10/2010 psychological report of Ralph Skillings, Ph.D., who found the Injured Worker to embellish symptoms and, even at that time, told Dr. Skillings that he believed himself to be permanently and totally disabled; 3) the 10/23/2010 vocational rehabilitation closure which indicated that the Injured Worker withdrew from services prior to completion; 4) the 11/21/2013 psychological report of Donald Tosi, Ph.D., who noted a strong "fake bad" response and over exaggeration which limited the validity of the testing and demonstrated a strong tendency toward symptom magnification; 5) the 06/26/2015 vocational assessment which notes multiple non-claim related issues and the assessor's determination that the Injured Worker's perception is that his ability to work is quite poor; and 6) the 02/03/2016 report of Dr. Wunder that indicates that he found range of motion testing of the right shoulder was not valid and the subjective complaints far exceeded the objective findings. Therefore, the Staff Hearing Officer finds the Injured Worker has not sustained his burden in this regard and the application is also denied on this additional basis.

{¶ 24} 11. Relator's request for reconsideration was denied by order of the commission mailed June 16, 2016.

{¶ 25} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 26} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 27} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 28} In this mandamus action, relator argues that the commission abused its discretion when it rejected the most recent psychological report prepared by Dr. Sed. In making this argument, relator argues the case of *State ex rel. Kroger Co. v. Indus. Comm.*, 80 Ohio St.3d 483 (1997). In that case, Wilma C. Williamson suffered a work-related injury and her workers' compensation claim was allowed for the psychological condition anxiety disorder with panic attacks. Williamson's treating physician attributed her symptoms to post-traumatic stress disorder, panic attacks, and dysthymia. Her employer argued that Williamson's doctor relied in part on non-allowed conditions; however, this court found that argument to be unpersuasive for the following reasons:

> Compensable disability must arise exclusively from the claim's allowed conditions. *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569, 55 Ohio Op. 472, 125 N.E.2d 1. Ideally, the diagnosis contained on a disability form should mirror

exactly the condition(s) allowed by the commission and, where it does not, closer examination may be warranted. Some degree of flexibility, however, seems particularly important when dealing with psychiatric conditions. As the Washington Supreme Court observed:

"Psychology and psychiatry are imprecise disciplines. Unlike the biological sciences, their methods of investigation are primarily subjective and most of their findings are not based on physically observable evidence." *Tyson v. Tyson* (1986), 107 Wash.2d 72, 78, 727 P.2d 226, 229.

*Id.* at 489-90.

{¶ 29} Relator relies on the above quote to support his argument here. However, relator ignores this court's more thorough explanation, wherein this court stated:

The reference to the nature of psychological diagnoses does not imply that these diagnoses are freely interchangeable. Clearly, major depression and paranoia are not the same and, in this case, all three disorders, PTSD, dysthymia, and anxiety disorder with panic attacks, are distinct. Nevertheless, we find that the multiple psychological diagnoses are not fatal to claimant's compensation application. There are three reasons for this.

First, regardless of the label attached, Dr. Blythe consistently referred to the same symptoms as being the cause of disability. Second, many of the symptoms are common to all three maladies. This largely explains why Dr. Blythe has had difficulty categorizing the disorder. Finally, Dr. Blythe has always related the relevant symptomatology to the industrial accident.

Cumulatively, this indicates that the debilitating symptoms are industrially related. This is not a situation in which diagnostic flexibility will allow a physician to surreptitiously treat a claimant for a nonindustrial ailment. The problem seems to rest solely on Dr. Blythe's understandable inability to affix a single diagnosis to symptoms that fit several categories. For these reasons, the commission's reliance on Dr. Blythe's reports is not an abuse of discretion, and the award of temporary total disability compensation from July 18, 1991 to January 1, 1994 is upheld.

*Id.* at 490.

{¶ 30} It is clear that this court's decision in *Kroger* was limited to situations where there are overlapping symptoms which are causing the disability and those symptoms are common to more than one diagnosis. As long as the treating physician consistently treats the relevant symptoms, this court noted that it is appropriate to accept some degree of flexibility when dealing with psychiatric conditions.

{¶ 31} In the present case, Dr. Reynolds noted that relator had and was being treated for bipolar disorder. In reaching that conclusion, Dr. Reynolds noted that relator was taking certain medications which were prescribed for bipolar disorder. Specifically, Risperdal and Latuda are medications which are prescribed to treat bipolar disorder. It was Dr. Reynold's opinion that, when considering the effect of only relator's allowed psychological condition (substantial aggravation of pre-existing adjustment disorder with depressed mood), he had no functional limitations and could return to his former position of employment. Dr. Reynolds gave specific reasons for his opinion and provided a reasonable explanation. As such, it was not an abuse of discretion for the commission to rely on his report to deny relator's application for PTD compensation.

{¶ 32} Furthermore, to the extent that relator asserts that the commission did not consider the report of Dr. Sed, there is no evidence in the SHO's order that would lead to this conclusion. It must be remembered that the commission is only required to identify the medical evidence on which it relies and is not required to cite all the evidence which it considers. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983). As such, there was no requirement on the SHO to discuss the report of Dr. Sed, and relator's assertion to the contrary fails.

{¶ 33} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his application for PTD compensation and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).